IN THE UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMAN EL-HARIRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | PLAINTIFF DEMANDS |
| v. | ) | TRIAL BY JURY |
| | ) | |
| ASTELLAS US LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Now comes Plaintiff, Iman El-Hariry, by and through her attorney, Richard J. Gonzalez/Chicago-Kent College of Law, and complaining of Defendant ASTELLAS US LLC, states as follows:

## **Nature of Action, Jurisdiction and Venue**

1.      This is an action for damages and equitable relief to redress the deprivation of rights secured to Plaintiff by virtue of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et. seq., as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A; and by virtue of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981A.  Plaintiff received a "Right To Sue Letter" with respect to Count I of this Complaint on February 28, 2011 and brings this action within the relevant limitations period.

2.      Jurisdiction of this Court is invoked pursuant to the provisions of 42 U.S.C. § 2000(e)-5, and 28 U.S.C. § 1331.

3.      Venue is proper by virtue of 28 U.S.C. § 1391(b).

**Parties**

4.      Plaintiff is a resident of the United States, whose national origin is Egyptian. From November 2008 until June 2010, Plaintiff was a full-time salaried employee of Defendant.

5.      Defendant is and was at all relevant times a private corporation engaged in the business of manufacturing and supplying pharmaceutical products, engaged in interstate commerce, and an employer within the definition of 42 U.S.C. § 2000 (e) (b).

**Facts Common To All Counts**

6.      In or about September 2008, Plaintiff was offered employment with Defendant as Executive Medical Director, Global Head of Oncology within its Deerfield headquarters in the State of Illinois.

7.      On November 10, 2010, Plaintiff accepted Defendant's offer and relocated to the United States at the direction of Defendant and commenced employment with Defendant, as Executive Medical Director, Global Head of Oncology within its Deerfield headquarters in the State of Illinois, and she remained employed at that facility until June 2010.

8.      When Plaintiff relocated to the United States she was placed on "01 Visa" status, which required her to remain employed in order to avoid deportation.

9.      In October 2009, Plaintiff was placed, without prior warning, on a "Performance Warning/Action Plan," which was successfully completed in or about January 2010 at which time Plaintiff was advised by Joyce Rico that "everything is good" and that "everyone here likes you.  You have a charming personality."  Throughout, Plaintiff was advised that her substantive job performance had never been an area of concern.

10.     On or about April, 1, 2010, Plaintiff came under the supervision of Peter Carberry, who effectively demoted Plaintiff from the position of Global Head of Oncology, for which she was hired.

11.     Plaintiff was surprised by the demotion because Plaintiff had a strong record of objective achievement and Carberry at no time articulated any clear set of expectations that would suggest a basis for demotion.

12.     When Plaintiff suggested to Carberry that she had, in effect, a contract specifying that Global Head of Oncology was her position, he sarcastically replied "In the United States, there are no contracts."

13.     On June 8, 2010, Plaintiff was summoned to a meeting with Cadberry and a Human Resources representative where Plaintiff was told, "We want to audit your expenses" for the previous one-year period.

14.     Cadberry asked Plaintiff about details of business travel she had taken in the months past, and Plaintiff provided him with a comprehensive and detailed response shortly thereafter that apparently dispelled any suspicions of wrongdoing.

15.     With that matter seemingly resolved, Cadberry then immediately announced "I am not going to make you Global Head of Oncology," and he cited his reasons as a claim that Plaintiff was not "fiscally responsible" and she had problems interacting with others.

16.     Instead, Cadberry offered Plaintiff the position of "Interim Head of Oncology" and told her to think it over for a few weeks, but before she accepted the offer, he again summoned her to a meeting that included Timothy Grant, the Senior Director of Human Resources.

17.     Plaintiff, assuming that the topic of the meeting was the job offer, began to discuss it when Cadberry announced "I'd like to change the focus of this meeting," and he then told Plaintiff that she was being fired for personal use of her company American Express card in the amount of $311.00 (which she had since repaid) on a trip to Berlin in April and for having rented a car during a trip to the United Kingdom (although Plaintiff had not submitted any expenses for hotel or meals on that trip during which she engaged in productive business on behalf of Defendant.)

18.     The day after Plaintiff was fired Defendant immediately hired someone else to fill Plaintiff's position.

19.     Plaintiff's previous supervisor had reported to her various complaints about her accent and claimed that co-workers could not understand her.

## COUNT I

## Unlawful National Origin Discrimination Under Title VII

20.     Any discomfort experienced by co-workers, including Cadberry, stemmed from cultural differences that manifested themselves both in terms of word choice and business demeanor.

21.     Defendant's workforce was far less ethnically diverse than the workforce at Plaintiff's previous employment where she had not experienced any difficulties with co-workers.

22.     Defendant was under a duty to conduct and implement its personnel decisions, including terminations, in a manner which did not discriminate against a person based on national origin.

23.     Defendant's announced reason for Plaintiff's termination constituted a pretext for unlawful national origin discrimination.

24.     The foregoing conduct constitutes unlawful national origin discrimination in violation of 42 U.S.C. § 2000 (e) <u>et</u>. <u>seq</u>.

25.     The aforementioned acts and conduct by Defendant, its agents and employees were performed intentionally and with malice and/or were taken with reckless indifference to Plaintiff's federally protected rights.

## **Damages**

26.     As a proximate result of the foregoing facts, Plaintiff has suffered loss of her job, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and loss of status and self-esteem.

WHEREFORE, Plaintiff prays that this Court:

A.      Enter an Order that Defendant discriminated against Plaintiff in violation of Title VII;

B.      Award Plaintiff back pay, prejudgment interest, and damages for employment benefits that she would have received but for the discriminatory acts and practices of Defendant;

C.      Award Plaintiff compensatory and punitive damages;

D.      Award reasonable attorneys' fees and costs incurred in this action;

E.      Order Defendant to cease and desist from discriminating on the basis of national origin;

F.      Reinstate Plaintiff into her prior or a comparable position; and

G.      Award such other relief that this Court deems just and appropriate.

## COUNT II

### Unlawful National Origin Discrimination Under 42 U.S.C. § 1981

27.     Plaintiff repeats and re-alleges paragraphs 1-26 of Count I and incorporates the same by reference as though fully set out herein.

28.     In addition to the foregoing acts of discrimination actionable under Title VII, Defendant violated 42 U.S.C. § 1981 when its treatment of Plaintiff was in contrast to its treatment of similarly-situated employees who were not of Egyptian national origin who were also employed at Defendant's Deerfield, Illinois headquarters.

29.     The foregoing conduct constitutes unlawful national origin discrimination in violation of 42 U.S.C. § 1981.

30.     Defendant performed the aforementioned acts and conduct through its agents with malice and/or reckless indifference toward Plaintiff's federally protected rights.

### Damages

31.     As a proximate result of the foregoing facts, Plaintiff has suffered loss of her job, lost wages, the value of lost benefits, incidental damages, pain and suffering in the form of emotional distress, anxiety, embarrassment, humiliation, and loss of status and self-esteem.

WHEREFORE, Plaintiff prays that this Court:

A.     Enter an Order finding that Defendant unlawfully discriminated against her on the basis of national origin in violation of 42 U.S.C. § 1981;

B.     Award Plaintiff back pay, prejudgment interest, and damages for employment benefits which she would have received but for Defendant's unlawful act;

C.     Reinstate Plaintiff into her prior or a comparable position;

6

D.     Award Plaintiff compensatory and punitive damages;

E.     Award reasonable attorneys' fees and the costs of this action;

F.     Order Defendant to cease and desist from retaliating against employees who have complained of unlawful discrimination in the workplace; and

G.     Such other relief as this Court deems just and appropriate.

## COUNT III

## Breach Of Contract

32.     Plaintiff repeats and re-alleges paragraphs 1-31 and incorporates the same by reference as though fully set out herein.

33.     Defendant's promises and oral and written offer of the position of "Global Head of Oncology" constituted an offer within the meaning of contract law.

34.     Plaintiff accepted the offer, thereby creating a binding contract between the parties.

35.     In consideration for Defendant's offer, Plaintiff resigned her prior position of gainful employment in London, England in order to accept the offered position.

36.     Plaintiff, relying on Defendant's offer, purchased a condominium in Illinois.

37.     In accepting the offered position and resigning her prior position, Plaintiff detrimentally relied upon Defendant's promises and Defendant is estopped by promissory estoppel from refusing to honor its promises to Plaintiff.

38.     By refusing to honor its promises, Defendant breached its contract with Plaintiff, causing Plaintiff damages, including lost wages.

39.     Additionally, by refusing to honor its promises, Defendant caused Plaintiff to be deported out of the United States, due to Plaintiff's "01 Visa" status.

WHEREFORE, Plaintiff prays for an Order:

A.   Specifically enforcing Defendant's promises to employ Plaintiff as "Global Head of Oncology" at the salary promised;

B.   Awarding Plaintiff all amounts of lost wages and benefits and incidental expenses occasioned by Plaintiff's reliance upon Defendant's promises; and

C.   Such other relief as this Court deems just and appropriate.

## COUNT IV

## Fraudulent Misrepresentation

40.   Plaintiff repeats and alleges paragraphs 1-39 and incorporates the same by reference as though fully set out herein.

41.   In offering Plaintiff the position of "Global Head of Oncology," Defendant, through its agents, made statements of a material nature which statements were untrue, including the statement that it had hired Plaintiff for said position and salary.

42.   Defendant's statements were made for the purpose of inducing reliance upon the Plaintiff.

43.   Said statements were, in fact, relied upon by Plaintiff to her detriment, in that Plaintiff resigned her prior position of gainful employment.

44.   Plaintiff was injured by her reliance upon Defendant's statements in that she suffered loss of salary, the value of promised benefits, and incidental expenses.

45.   The foregoing conduct constitutes the tort of fraudulent misrepresentation.

46.   In committing said tort, Defendant acted willfully and with malice.

WHEREFORE, Plaintiff prays for an Order:

A.      Awarding Plaintiff all amounts of lost wages;

B.      Awarding Plaintiff the value of all benefits promised her;

C.      Awarding Plaintiff compensatory and punitive damages in an appropriate

amount; and

D.      Such other relief as this Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

IMAN EL-HARIRY

By: ___s/ Richard J. Gonzalez_____
            Attorney for Plaintiff

RICHARD J. GONZALEZ
Law Offices of Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
Tel.: (312) 906-5079
Attorney Number: 3121751